

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| MARK WILLIAMS and MARIAN NUNER, husband and wife, | ) ) ) | No. 36852-1-III |
| Respondents, | ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| PAUL AND SUSAN DANA, husband and wife, DANA LIVING TRUST, KENNETH L. WERNER AND ANDREA M. WERNER, husband and wife, ROBERT NEILSEN and JANE DOE NEILSEN, husband and wife, EUGENE L. TAYLOR and MICHELLE A. TAYLOR, husband and wife, | ) ) ) ) ) ) ) ) ) ) | |
| Appellants. | ) | |

KORSMO, A.C.J. — This appeal arises from a mediated agreement to settle an easement dispute. We affirm and grant respondent's request for attorney fees.

FACTS

The underlying dispute is secondary to the issues in this appeal and can briefly be summarized. Appellant Dana and Respondent Williams[1] disagreed concerning the scope

---

[1] The appellants are referred to collectively as Dana, and the respondent Williams/Nuner marital community is referred to as Williams.

of an easement along the boundary of their properties.  After Williams' motion for

summary judgment was denied, the case went to mediation.

By the time of mediation, Dana was proceeding pro se; Williams was represented

by counsel.  At mediation, the parties reached a tentative agreement.  The agreement

provided:

1) The parties agree to a 15 foot easement on each side of the property line.
2) [Dana] will move or remove the fence within one year onto the parties' property outside of the easement.
3) [Williams] will not cause the trees within the easement to be cut.
4) Release of all claims Williams/Nuner have against Danas and the trust with prejudice.
5) Mutual non-disturbance agreement-not verbally or physically harass each other (no harassment as defined in statutory harassment orders).
6) If either party must enforcement [sic] of the settlement agreement, prevailing party gets attorney fees.
7) [Williams] will remove the slash pile.
8) Steve [Williams' attorney] will prepare the legal paperwork and his clients will pay for the filing.[2]
9) Release of lis pendens.

Clerk's Papers (CP) at 273.  The agreement was signed by the attorney for Williams and

needed their approval.  They approved the agreement.

Williams' attorney then prepared a draft settlement document containing the

following summarized provisions:

1. An agreement to recognize the boundary line easement.

---

[2] While Dana apparently had an attorney early in the process, Dana was pro se through the relevant parts of this case until appeal.

2. The width of the easement shall extend 15 feet from the centerline onto each party's property (30 feet total) with a fence on the Dana's property moved to leave 24 feet on their side unobstructed.
3. Williams will not cut any trees on the Dana property.
4. Mutual non-disturbance.
5. Do not block the easement
6. Dismiss the lawsuit.

CP at 356-357.  The e-mail accompanying the draft document noted that it contained additional language and some details requested by Williams and requested that if "you feel you are being treated unfairly, assume it is my mistake and make a suggestion."  CP at 358.

In response to the draft, Dana sent an e-mail rejecting the proposal and the entire mediation process, claiming that it had been a ruse.  He threatened to hire an attorney and sue Williams for a six-figure sum.  The e-mail also demanded changes to the easement terms and presented a 10-point counter-offer containing detailed easement provisions and requesting $5,000 for "reimbursement."  CP at 237-238.  Williams then brought a contempt action to enforce the mediated agreement, claiming that Dana had repudiated it. Dana contended it was tentative and did not bind him.  Mr. Dana stated that when he received the draft document, "I was done."  Report of Proceedings at 77.

The trial court concluded that the agreement, although needing to be placed in final form, was a valid contract despite any "buyer's remorse."  The court declined to find Dana in contempt and directed Williams' counsel to prepare a final agreement that

only reflected the terms of the mediated agreement. Williams' counsel then sought attorney fees as the prevailing party seeking to enforce the mediated agreement. Dana argued that Williams had not prevailed and that Dana should receive compensation for time and mental duress.

The court concluded that Williams had prevailed and awarded $2,770 in attorney fees. Dana then appealed to this court and retained counsel. This court heard the case on the basis of the briefing without conducting oral argument.

ANALYSIS

Dana challenges the award of attorney fees on the basis that the proposed draft settlement order deviated from the mediation agreement, rendering the proposal a counter-offer rather than a confirmation of the mediation agreement. While a clever argument, it was not the argument actually made to the trial judge, and thus, is not supported by the record.

Well-settled law governs the issue presented. Contract law principles govern construction of settlement agreements. *Morris v. Maks*, 69 Wn. App. 865, 868, 850 P.2d 1357 (1993). The authority to enforce a settlement agreement is based in CR 2A and RCW 2.44.010. *Morris*, 69 Wn. App. 868. The general rule is that a settlement agreement must either be acknowledged in court or be in a signed writing. *Id*. at 868-869. Even if the parties anticipate a later formalized agreement, evidence may establish a binding preliminary agreement based on the extent the parties agreed to the subject

4

matter, whether the present writing establishes the key terms, and if the parties anticipate the agreement be binding before the formalized contract. *Loewi v. Long*, 76 Wash. 480, 484, 136 P. 673 (1913). If the party disputing the settlement agreement fails to demonstrate that the parties did not intend to be bound by the agreement until the formalized document was prepared, the court may enforce the settlement agreement. *Morris*, 69 Wn. App. at 872.

Appellate courts review a trial court's decision to enforce a settlement agreement for abuse of discretion. *Id.* at 868. Discretion is abuse when it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

Recognizing these standards, Dana now, quite properly, concedes that the original mediated agreement was valid and challenges only the proposed final order. If he had confined his trial court remarks to attempting to modify the proposal in line with such sentiments, his argument would properly have focused on whether or not the proposed draft materially altered the mediation agreement. However, it did not.

Instead, Dana repudiated the agreement when he received the draft judgment, saying he "was done" with it, calling it a ruse. He threatened litigation and then dictated the acceptable terms of the settlement of his proposed litigation. He characterized the mediation agreement as "tentative" in his remarks to the court, arguing that all such proposals were tentative and not binding. He made no argument that the court should

enforce the unadorned agreement, nor did he ask the court to modify or correct the draft proposal. Indeed, Dana fought the motion to enforce the mediated agreement. These simply were not the actions of a party that was honoring its agreement.

The trial court did not err. While counsel has valiantly attempted to recast his client's arguments in a more favorable light, the record simply does not support the appeal. The court properly awarded attorney fees to Williams for his efforts to enforce the mediated agreement. For the same reason, we award Williams attorney fees on appeal. Our commissioner will consider a timely request. RAP 18.1(d).

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, A.C.J.

WE CONCUR:

_____
Fearing, J.

_____
Siddoway, J.

6